IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC HANSEN, | ) | CASE NO. 5:07CV1468 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MEMORANDUM OPINION |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the magistrate judge pursuant to consent. The issue before the court is whether the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for social security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and disability benefits under Title II of the Social Security Act, 42 U.S.C. § 416(i) and 423 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the decision of the Commissioner is affirmed.

I.

Plaintiff, Eric Hansen ("Hansen"), filed an application for disability benefits in April

2002, alleging an onset date of November 15, 2001. Plaintiff asserted disability due to herniated discs in his back. After plaintiff's application for disability was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff was represented by counsel and testified on his own behalf. A vocational expert also testified.

On September 18, 2006 the ALJ issued a finding of no disability. The ALJ found that plaintiff has impairments of the lumbar spine but concluded that he does not have an impairment or combination of impairments equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (1992). The ALJ further concluded that plaintiff retains the residual functional capacity to lift, carry, push, and pull up to 10 pounds occasionally and less than 10 pounds frequently; sit, stand, and walk for a total of eight hours in an eight-hour workday but must be allowed to sit and stand at will; can never stoop, kneel, crouch, crawl, or climb; cannot work around hazardous machinery or unprotected heights; and cannot drive motor vehicles. Plaintiff had no limitations on his ability to perform manipulative, visual, communicative, or mental functions.

The ALJ concluded that plaintiff could not perform his past relevant work as a flexographic printer. Based on the testimony of the vocational expert, the ALJ determined that there existed in the national economy a number of jobs plaintiff can perform, including food and beverage order clerk, production inspector, and charge account clerk. Thus, he concluded, plaintiff is not disabled.

Plaintiff requested review by the Appeals Council. The Appeals Council refused to review the determination, and the ALJ's finding became that of the Commissioner. On appeal plaintiff raises two issues: 1) the ALJ erred in finding that plaintiff's mental impairments were not severe, and 2) the ALJ erred in failing to give appropriate weight to the opinion of plaintiff's treating

physician, Dr. Geiger.

## II.

Hansen was 41 years old at the time of the ALJ's decision. He had a high school education and past relevant work as a flexographic printer. Plaintiff herniated several discs in his low back in a work injury. Because his work ability was reduced and his employer could not accommodate him, he was terminated by the printing company. Plaintiff testified that he does not drive often and does very little work at home. At the time of the hearing he was using a Fentanyl theragesic patch and taking Percocet, Celebrex, Restoril, and Neurontin. Hansen testified that although the pain medications "kind of" block the pain, they make him drowsy and lethargic. He could sit for 20 minutes, stand for 1/2 hour, and pick up a gallon of milk. He laid down much of the day to deal with pain.

The relevant medical evidence is as follows. Plaintiff was injured at work in March 2000. He was diagnosed with a lumbar sprain/strain and herniated L5-S1 disc with no impingement on the thecal sac, S1 or L5 nerve roots. An MRI taken in October 2001 revealed disc herniations of L3-4, L4-5, and L5-S1. His treating chiropractor, G. L. Wheat, D.C., opined in February 2002 that the herniations of L3-4 and L4-5 flowed from plaintiff's original injury.

In February 2001 Hansen underwent a functional capacity assessment. At the time plaintiff was working eight-hour light duty days. Plaintiff had significant problems with any lifting near the floor due to pain and decreased flexibility and range of motion in the trunk and lower extremities. His gait was slightly antalgic. The evaluation showed that plaintiff could perform light to medium lifting and frequently walk 12 feet, carry 20 pounds, balance 10 paces, and crouch. He could stand, sit, and walk frequently (1/3 to 2/3 of the workday), and crouch constantly.

3

In December 2001 plaintiff was examined by Jeffrey Tharp, D.O. Dr. Tharp reported that Hansen stood independently, walked with normal gait with good strength in heel and toe ambulation, had scoliosis, had minimal tenderness at lumbosacral junction, flexed 40 degrees and extended 20 degrees with mechanical back pain, and had full range of motion in seated position. His patella and Achilles reflexes were intact, as was pinprick sensation in bilateral lower extremities. Motor strength was 5/5. Plaintiff had good range of motion in hips, knees, and ankles. Dr. Tharp noted that the MRI showed disc herniation at 3-4, 4-5, and 5-1 levels, all subligamentous without significant canal stenosis. The impression was lumbosacral sprain/strain with disc disease and chronic mechanical back pain. Dr. Tharp opined that plaintiff was best treated conservatively with exercise and anti-inflammatories.

In May 2002 David Louis, M.D. examined plaintiff for the worker's compensation agency. Dr. Louis opined that plaintiff had reached maximum medical improvement and could return to work without restrictions. Specifically Dr. Louis questioned whether plaintiff had a disc herniation.

In August 2002 Gary Sipps, Ph.D. examined plaintiff for the state agency. Plaintiff walked with a pronounced limp and a sluggish pace and appeared to have difficulty lowering and raising himself from his seat. Hansen reported being depressed constantly since losing his job. He was oriented x3; concentration and attention to task were adequate. His knowledge of the rules of social judgment and conformity appeared to be adequate to low average. He reported doing yard work. Dr. Sipps evaluated plaintiff's overall functioning as being at a mildly reduced level of efficiency. As for daily activities, he made coffee, watched news on television, swam, watered the flowers, spent time working on his car, and might go fishing. In the afternoon he watched television

or read the paper. He had a friend who helped him with "grunt" work. Hansen was tearful at times during the interview. Dr. Sipps diagnosed depressive disorder, not specified, and pain disorder associated with psychological factors and a general medical condition. While plaintiff was evaluated as having "low average" abilities in various areas, Dr. Sipps found him no more than mildly to moderately impaired in all other areas. He found plaintiff's overall functioning to be at a mildly reduced level of efficiency and assessed a GAF of 56.

John E. Hurley, D.O., examined plaintiff for worker's compensation in April 2003 and reported that plaintiff appeared to be in significant distress during the history and examination. He was unwilling to bear significant weight through the lower left extremity. Lumbar extension was limited to five degrees due to pain. Supine straight leg raising was positive for low back pain at 35 degrees. Muscle stretch responses at the patella and ankle were graded 2/5 bilaterally. Sensation to light touch and vibration was intact in the lower extremities. Dr. Hurley's impression was that Hansen suffered from severe chronic pain and associated disability. However, the neurological examination did not elicit positive objective findings. Dr. Hurley recommended advanced pain management.

In May 2003 Hansen saw Robert Geiger, M.D. for pain management. He had an epidural injection and was given pain medication. In January 2004 Dr. Geiger opined that plaintiff could lift/carry 5-10 pounds due to pain, back spasm, sciatica, legs giving out, and a displaced lumbar disc. He could stand/walk two hours in an eight hour day and sit up to four hours with frequent breaks and position changes. He could push/pull occasionally but reach, handle, feel, see, hear, speak, and perform fine and gross manipulation frequently.

In April 2004 an MRI of the lumbar spine showed mild degenerative change to the

5

lumbosacral spine. In December 2004 plaintiff had an essentially normal CT discography without evidence of fissuring or annular rupture.

Priti Nair, M.D. examined plaintiff for the state agency in June 2004. Plaintiff reported that he could handle his own personal care; his hobby was fishing, and he spent some time in his yard. Plaintiff walked slowly with forward flexion at the lumbar spine. He did not sit during the interview. Movements among sitting, standing, and lying were performed slowly and with pained facial expressions. The spinal examination was normal, with no muscle spasm but lumbar flexion limited to 30 degrees, extension to neutral or 0 degrees, and side bending to 20 degrees. Muscle strength was 5/5 bilaterally; plaintiff could walk on his heels and toes and tandem walk. While his gait was not antalgic, he maintained a forward flexed position of lumbar spine and hips during ambulation. Reflexes were 2+ and symmetric. The sensory examination was normal. Straight leg raise was negative bilaterally in a seated position; plaintiff resisted raising 30 degrees on the right and 50 degrees on the left in a supine position. Dr. Nair opined that plaintiff had met his maximum medical improvement level. He opined that plaintiff could return to a light duty position of employment with restriction of no lifting greater than 25 pounds, and no bending, crawling, or stooping.

In January 2005 Dr. Geiger wrote to plaintiff's counsel. He stated that plaintiff continued to show wide gait, flexion stance at the waist, depression, considerable pain to palpation throughout the lumbosacral area, and significant pain on facet loading maneuvers. He showed a little generalized lower extremity atrophy without focal neurologic findings and continued to complain of sharp radiation through the posterolateral aspect of his left lower extremity. Dr. Geiger recommended a trial of spinal cord stimulation. He doubted that plaintiff could return to his former

employment but was not certain of his current residual functional capacity.  An evaluation by someone in Dr. Geiger's office indicated spine tenderness, muscle tightness, and paraspinal POP along with an antalgic gait.  Right and left lower extremity strength were at 4/5, 4/4, and 3/4 at various times.  In December 2005 plaintiff decided against spinal cord stimulation.  Hansen had a series of epidural injections in early 2006.

The vocational expert testified at the hearing that plaintiff could not perform his past relevant work but could perform work as a food and beverage order clerk, production inspector, and charge account clerk.

### III.

A claimant is entitled to receive supplemental security benefits under the Social Security Act when he establishes disability within the meaning of the Act.  42 U.S.C. §1382c(a)(1); 20 C.F.R. §416.905 (1992); *Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §416.905 (1992).

This court's review is limited to a determination of whether on the record as a whole the Commissioner's decision is supported by substantial evidence.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).  "Substantial evidence" is more than a scintilla of evidence but less than a preponderance of evidence.  It is evidence which a reasonable person would accept as adequate support for a proposition.  *Richardson v. Perales*, 402 U.S. 389 (1971).  If the decision is supported by substantial evidence, the Commissioner's determination must stand regardless of whether the

reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff first argues that the ALJ erred in failing to find that he suffers from a severe mental impairment. Specifically he argues that the ALJ erred in determining that a plaintiff has a severe mental impairment only if the impairment significantly limits his ability to perform basic work activities. Plaintiff is incorrect. The standard is not whether the impairment has "any effect on employment activities." A "severe impairment" in fact is one that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). There is nothing in Dr. Sipps' evaluation to suggest that plaintiff cannot perform basic work activities of understanding, carrying out, and remembering simple instructions based on his mental ability. At the most, plaintiff had some mild limitations in these areas. Moreover, no other physician or plaintiff himself offered evidence of a severe mental impairment. Plaintiff's argument is without merit.

Next plaintiff argues that the ALJ erred in failing to accept the opinion of plaintiff's treating physician, Dr. Geiger. The opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner. *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983). "The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). The ALJ is not bound by the opinion of a claimant's treating physician; however, if he chooses to reject the opinion, he must articulate good reasons for not doing so. *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Even if substantial evidence otherwise supports the Commissioner's conclusions, reversal is required where the agency

8

does not follow its own regulations.  This requirement is part of 20 C.F.R. § 404.1527(d)(2) (2004), which incorporates the previously existing regulation.  As stated in *Wilson*,

> Pursuant to this regulation, an ALJ must give more weight to opinions from treating sources since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

378 F.3d at 544.  Nevertheless, in order for the treating physician's opinion to be entitled to substantial weight, the opinion must be more than a conclusory statement and must be supported by clinical or diagnostic findings.  *Kirk v. Secretary of Health and Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).  If the ALJ chooses not to defer to the opinion of the treating physician, he

> must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.

20 C.F.R. § 404.1527(d)(2).

Hansen saw Dr. Geiger for the first time for pain management in 2003.  He had an epidural injection then and series of them in 2006.  In January 2004 Dr. Geiger opined that plaintiff could lift/carry 5-10 pounds due to pain, back spasm, sciatica, legs giving out, and a displaced lumbar disc.  He could stand/walk two hours in an eight hour day and sit up to four hours with frequent breaks and position changes.  He could push/pull occasionally but reach, handle, feel, see, hear, speak, and perform fine and gross manipulation frequently.  Evaluations by someone in Dr. Geiger's office in 2005 indicated spine tenderness, muscle tightness, and paraspinal POP along with an antalgic gait.  Right and left lower extremity strength were at 4/5, 4/4, and 3/4 at various times.

In January 2005 Dr. Geiger noted that plaintiff continued to show wide gait, flexion stance at the waist, depression, considerable pain to palpation throughout the lumbosacral area, and significant pain on facet loading maneuvers.  He showed a little generalized lower extremity atrophy without focal neurologic findings and continued to complain of sharp radiation through the posterolateral aspect of his left lower extremity.  He doubted that plaintiff could return to his former employment but was not certain of his current residual functional capacity.  It is not clear from the records when Dr. Geiger had last seen and examined plaintiff because there are few, if any, physician notes signed by Dr. Geiger.

The following is undisputed: Dr. Geiger treated plaintiff for back pain; Dr. Geiger on two occasions issued opinions that severely limited plaintiff's employment options; Dr. Geiger had no objective evidence to support his opinions; and Dr. Geiger stated in 2005 that he would like to send plaintiff for a functional capacity examination so he could find out what plaintiff could do, the last such examination having been performed four years earlier.  The ALJ rejected Dr. Geiger's opinion because of lack of objective medical evidence and because Dr. Geiger was unsure of plaintiff's functional capacity.

The court cannot say that the ALJ's opinion is not supported by substantial evidence. There is objective support for his conclusion, and he limited plaintiff more than any other examining or consulting physician with the exception of Dr. Geiger.  Moreover, Dr. Geiger admitted in 2005 that he did not know the functional level at which plaintiff could perform.

The court concludes that the decision of the Commissioner is supported by substantial evidence; plaintiff's arguments are without merit.

IV.

For the above stated reasons, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.


Dated: December 5, 2007                     s:\Patricia A. Hemann
                                            Patricia A. Hemann
                                            United States Magistrate Judge